UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| | USDC SDNY |
| | DOCUMENT |
| | ELECTRONICALLY FILED |
| | DOC #: |
| | DATE FILED: 5/19/2020 |

ROSEMARIE KALL,

                                Plaintiff,

        -against-

PEEKSKILL CITY SCHOOL DISTRICT, ET AL,

                                Defendants.

18-cv-10199 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Rosemarie Kall ("Plaintiff") commenced this retaliation action against the Peekskill City School District, Andrew Weisman, Robin Zimmerman (together, the "District Defendants"), Whitsons Food Corp., Rick Emery (together, the "Whitsons Defendants"), Shaquana Encarnacion, Lynn Holliman, and Eric Kaplan on November 7, 2018. (*See* ECF Nos. 4–5.) Plaintiff alleges claims under the False Claims Act, 31 U.S.C. § 3730(h)(1), the New York False Claims Act, § 191, and the Free Speech clause of the First Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983 ("Section 1983"), as well as common law claims for defamation, intentional infliction of emotional distress, and tortious interference. (*See* Amended Complaint ("Am. Compl."), ECF No. 22, ¶ 2.)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the District Defendants, Whitsons Defendants, and Eric Kaplan (the "Moving Defendants") have each moved to dismiss the Complaint.[1] (*See* ECF Nos. 40, 43, and 49.) For the following reasons, these motions to dismiss

---

[1] Defendant Shaquana Encarnacion was served on April 3, 2019, and her Answer was due on April 24, 2019. (*See* ECF No. 26.) The Clerk of the Court entered a Certificate of Default as to Shaquana Encarnacion on June 24, 2019. (ECF No. 38.) Similarly, Defendant Lynn Holliman was served on April 3, 2019, and her Answer was due on

are GRANTED in part and DENIED in part.

## BACKGROUND

### I.   Factual Allegations

The following facts are derived from the Amended Complaint or matters of which the Court may take judicial notice and are taken as true and constructed in the light most favorable to Plaintiff for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

#### a.   Extrinsic Materials

As a preliminary matter, the Court must address which documents the Court may properly consider in resolving the instant motions. On a motion to dismiss, a court "may review only a narrow universe of materials" without converting the motion into one for summary judgment. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). This generally includes "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

For a document to be incorporated by reference, the complaint must make a "clear, definite, and substantial reference" to it. *N.Y. Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 276 (S.D.N.Y. 2013). "Mere discussion or limited quotation of a document in a complaint" does not qualify as incorporation. *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008) (internal quotations omitted). But even where a document is not incorporated by reference, a court "may nevertheless consider it where the complaint 'relies heavily upon its terms

---

April 24, 2019. (*See* ECF No. 27.) The Clerk of the Court entered a Certificate of Default as to Lynn Holliman on June 24, 2019. (ECF No. 39.)

and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). This requires a party to establish that the plaintiff had "actual notice" of the documents and relied upon them in setting forth his or her claim. *Id.*; *see also Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 423 n.16 (S.D.N.Y. 2013) ("In order for the contents of a document to be deemed integral to the complaint, they must be deemed necessary to the plaintiff's statement of a claim under Rule 8.").

The District Defendants rely upon Plaintiff's testimony from an August 17, 2018 50-h examination in their briefing. Though this testimony was given prior to the filing of this action, the District has not argued that it was incorporated by reference, or that Plaintiff otherwise relied upon it in setting forth her claim. Accordingly, consideration of this document, which is extrinsic to the pleadings, is improper at this time. *See, e.g, Rosado v. Vill. of Goshen*, No. 17-CV-00360 (NSR), 2019 WL 1382975, at *8 (S.D.N.Y. Mar. 27, 2019) ("While . . . Plaintiff's affidavit contradicts the allegations in the Amended Complaint, use of the affidavit for the purpose of deciding the instant motion is impermissible.")

### b. Instructions Regarding Free School Lunches

Plaintiff is a former cafeteria employee at the Defendant Peekskill City School District (the "District"), a school district within Westchester County, New York. (Am. Compl. ¶¶ 7, 16–17.) Plaintiff was initially employed by the District, and subsequently came to be employed by Whitsons Food Corp. ("Whitsons") in or about 2006. (*Id.* ¶¶ 10, 18.) As a cafeteria employee, Plaintiff's duties included making and serving lunch to students of the District during the school

day.  (*Id.* ¶ 31.)[2]

On or about May 15, 2018, Plaintiff's supervisor—the Food Service Director for the District, Defendant Andrew Weisman ("Weisman")—told Plaintiff to give the school children a second free lunch.  (*Id.* ¶¶ 43–44.)  Weisman further told Plaintiff to record the second free lunch as a lunch for an "open student," rather than what Plaintiff understood to be the normal procedure of recording the identity of the students receiving the second lunch.  (*Id.* ¶¶ 45, 47–48.)  Plaintiff believed that accurate recording of the lunches being provided was a requirement of the state and/or federal lunch programs.  (*Id.* ¶ 51.)

Plaintiff objected to Weisman's instruction that she record free lunches without identifying the students, as she believed this was the unlawful stealing of public funding, fraud, public corruption, and/or misuse of public funds.  (*Id.* ¶ 54–55.)  Plaintiff notified another Food Service Director employed by Whitsons, Eric Kaplan ("Kaplan"), of Weisman's order.  (*Id.* ¶ 58–61.)  In response, Kaplan, who was also Plaintiff's supervisor, told Plaintiff that she had to follow Weisman's orders, and that such actions would benefit Whitsons.  (*Id.* ¶ 59, 65–66.)

### c.  Events Following Plaintiff's Objections

Within a few days of Plaintiff objecting to Weisman's orders, Weisman transferred Plaintiff to the high school, where Plaintiff was tasked with cutting fruit instead of her normal job duties of Head Cook.  (*Id.* ¶ 70.)  Plaintiff alleges that shortly thereafter, Weisman told Plaintiff that the transfer was due to her objections to his instructions.  (*Id.* ¶ 71.)  Plaintiff further alleges that Weisman stated, "it's not a felony what I asked you to do. And the only thing that's going to happen is we'll have to pay the money back."  (*Id.* ¶ 72.)

---

[2]  The State of New York, including the District, participates in the National School Lunch Program, which is part of the United States Department of Agriculture.  (*Id.* ¶¶ 38–40.)  The District receives funding for its school lunch program from both the state and federal governments.  (*Id.* ¶¶ 36–37.)

A few days later, the District and Whitsons suspended Plaintiff's employment.  (*Id.* ¶ 74.)
A few days after that, the District Manager for Whitsons, Rick Emery ("Emery"), informed
Plaintiff that she was terminated "based on allegations being made against her."  (*Id.* ¶ 75.)
Plaintiff explained to Emery that she had objected to Weisman's orders to provide second lunches
and record them inaccurately.  (*Id.* ¶ 76.)

On or about May 25, 2018, Robin Zimmerman ("Zimmerman"), the Assistant
Superintendent for Business for Peekskill, sent an email to Emery and Weisman stating that
Plaintiff's "behavior and interaction with students and staff at the Woodside Elementary School
is unacceptable, inappropriate, and unconducive . . ." (*Id.* ¶ ¶ 22, 77.)  Zimmerman continued,
"there has been several instances of her mean spirited behavior." (*Id.* ¶ 79.) Zimmerman instructed
Emery to "move [Plaintiff] to another district as her time with the Peekskill City School District
has come to an end."  (*Id.* ¶ 81.)

On May 29, 2018, Emery and/or Kaplan drafted a memorandum,[3] which included a
statement that Defendant Shaquana Encarnacion made to Emerge and Weisman regarding
Plaintiff's conduct.  (*Id.* ¶ 82.)  According to the memo, Incarnation witnessed Plaintiff being "very
rude to students, yelling at them and calling them thieves . . . and run[ning] after them into the
cafeteria and tak[ing] back food that they took . . ."  (*Id.*)  The memorandum also stated that
Encarnacion stated that Plaintiff "would feed certain teachers for free, and make others pay for
their meal."  (*Id.* ¶ 85.)

The May 29, 2018 memorandum also included that Defendant Lynn Holliman stated that
Plaintiff was "very rude to students and favors certain teachers."  (*Id.* ¶ 88.)  Holliman also stated

---

[3] There are two versions of the May 29, 2018 memorandum, one attributable to Kaplan and one to Emery.
(*Id.* ¶ 82.)

that Plaintiff "would take it [food] back from them [students]." (*Id.* ¶ 91.)  The memo summarized that both Encarnacion and Holliman "expressed that [Plaintiff] treats the kids very poorly and that many are afraid of her." (*Id.* ¶ 94.)  Plaintiff alleges that this memorandum was circulated to third parties at Whitsons and the District.  (*Id.* ¶ 98.)  Plaintiff also alleges that at some point between May 4, 2018 and May 29, 2018, Weisman told third parties, including employees of Whitsons and the District, that Plaintiff mistreated children.  (*Id.* ¶ 102.)

### d.  Plaintiff's Termination

Whitsons terminated Plaintiff by letter dated June 7, 2018.  (*Id.* ¶ 20.)  Whitsons stated that Plaintiff's employment was terminated due to "complaints from our client for rude and improper behavior to students and faculty." (*Id.* ¶ 99.)  Plaintiff alleges that this termination was based on the statements made by Zimmerman, Holliman, Encarnacion, Weisman, Emery, and/or Kaplan. (*Id.* ¶ 100.)

## LEGAL STANDARD

### I.   12(b)(6)

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570.  A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable.  *Iqbal*, 556 U.S. at 678.  To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations."  *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).  While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79.

## II.   42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).  To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'"  *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

## I.   First Amendment Retaliation Claims Against the District Defendants

Plaintiff's first claims, brought under 18 U.S.C. § 1983, assert that the District Defendants retaliated against Plaintiff in violation of the First Amendment after she expressed concern over how lunches were distributed to students.  (Am Compl. ¶¶ 105–117.)  To properly assert a First Amendment retaliation claim, a plaintiff has the burden of demonstrating that (1) she has a right protected by the First Amendment; (2) the defendant's actions were "motivated or substantially

caused" by the exercise of that right; and (3) the defendant's actions caused plaintiff some type of injury. *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

Municipal employees are generally entitled to First Amendment protection only when they speak as a "citizen addressing matters of public concern," however, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 421 (2006). "This is the case even when the subject of an employee's speech is a matter of public concern." *Ross v. Breslin*, 693 F.3d 300, 305 (2d Cir. 2012).

The inquiry into whether speech was made pursuant to an employee's "official duties" focuses on whether the speech "was part-and-parcel of [the employee's] concerns about his ability to properly execute his duties." *Breslin,* 693 F.3d 306 (quoting *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 203 (2d Cir. 2010)).[4] This includes examination of "the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two. Other contextual factors, such as whether the complaint was also conveyed to the public, may properly influence a court's decision." *Breslin*, 693 F.3d at 306. "Although context determination for public employees' speech may be fact-intensive, it is a matter of law left to the court." *White v. City of New York*, No. 13 CIV. 7156 ER, 2014 WL 4357466, at *9 (S.D.N.Y. Sept. 3, 2014) (citing *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003)).

---

[4] "[S]peech can be "pursuant to" a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Weintraub*, 593 F.3d at 203.

### a.  Plaintiff's Job Responsibilities

As articulated in the Amended Complaint, Plaintiff's job responsibilities included the duty to accurately track the distribution of school lunches.  (Am. Compl. ¶ 50 ("Persons whose duties involved preparing and serving school lunches at Peekskill, such as the Plaintiff, had to record accurately the lunches they provided.").)  Thus, Plaintiff's speech regarding how to accurately track lunch distribution pertained directly her job responsibilities.   This strongly suggests Plaintiff's speech was made pursuant to her "official duties."  *See*, *e.g.*, *Breslin*, 693 F.3d at 306 (finding payroll clerk's complaints about improper payments and promotions were made pursuant to her official duties to balance the payroll and report irregularities); *White*, 2014 WL 4357466, at *11 (granting motion to dismiss where "[the] speech pertaining to the location and scheduling of the services for [plaintiff's] special education students clearly falls within the scope of her professional duties.").[5]

### b.  To Whom Plaintiff Complained

In addition, Plaintiff directed her complaints to Mr. Weisman, Mr. Kaplan, and her co-workers.  (Am. Compl. ¶¶ 55, 57, 61.)  The fact that she did not air her grievances beyond the workplace further suggests she was speaking as an employee.  *See, e.g., Massaro v. N.Y.C. Dep't of Educ.*, 481 F. App'x 653, 655–56 (2d Cir. 2012) (summ. order) ("The district court's conclusion that [plaintiff] spoke as an employee rather than a private citizen is supported by the facts that she aired her complaints only to several school administrators rather than to the public."); *McGuire v. City of New York*, No. 12-CV-814 (NGG) (PK), 2015 WL 8489962, at *7 (E.D.N.Y. Dec. 8, 2015)

---

[5] This conclusion is not derived from Plaintiff's job description; it is reached based on a plain reading of the factual allegations presented in the Amended Complaint.  *See Garcetti v. Ceballos*, 547 U.S. 410, 424–25 (2006) ("Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.")

("McGuire's speech was made through official channels. Courts in this circuit have found, that where an employee speaks only through official channels, rather than publicly, they are more likely to be speaking as an employee."); *Anglisano v. New York City Dep't of Educ.*, No. 14-CV-3677 SLT SMG, 2015 WL 5821786, at *7 (E.D.N.Y. Sept. 30, 2015) ("While plaintiff asserts that she was acting as a 'private citizen,' the fact that she spoke only to her direct supervisor and to the [school] principal belies this conclusory assertion.").  While Plaintiff is correct that this factor is not dispositive alone,[6] it nonetheless weighs in favor of a finding that Plaintiff spoke as an employee.

In sum, even drawing all inferences in Plaintiff's favor, the Court concludes that Plaintiff has failed to plead facts plausibly suggesting that she spoke as a private citizen.  On the contrary, the Amended Complaint presents factual allegations indicating that Plaintiff's statements were made pursuant to her "official duties," and that she was not speaking "as a citizen . . . on a matter of public concern."  *See Breslin*, 693 F.3d at 305.  Because such speech is not protected by the First Amendment, *see id.*, Plaintiff's First Amendment claims are dismissed with prejudice.

## II.   Retaliation Claims Under the Federal and State False Claims Acts

Plaintiff asserts retaliation claims under the federal False Claims Act ("FCA"), 31 U.S.C. § 3730(h)(1), and New York False Claims Act ("NYFCA"), N.Y. Finance Law § 191, against the District and Whitsons.  (Am. Compl. ¶¶ 118–143.)[7]  These claims center on the allegation that "in retaliation" against Plaintiff, the District and Whitsons "caused the Plaintiff to be transferred, suspended and then terminated as an employee of Whitsons and an agent and/or employee of

---

[6] *See Breslin*, 693 F.3d at 307 ("Speech to a supervisor even in the workplace can be protected as that of a private citizen if it is not made pursuant to the employee's official duties as an employee.").

[7] Plaintiff's memorandum of law emphasizes that these claims are brought against the District and Whitsons, but not against Zimmerman or Weisman individually.  (*See* ECF No. 47 at 16.)

Peekskill because of her opposition to Weisman's unlawful conduct." (Am. Compl. ¶¶ 122, 129, 135, 142.)

To state a FCA retaliation claim under Federal or New York state law,[8] a plaintiff must show that: "(1) the employee engaged in conduct protected under the FCA; (2) the employer knew that the employee was engaged in such conduct; and (3) the employer discharged, discriminated against or otherwise retaliated against the employee because of the protected conduct." *Garcia v. Aspira of New York, Inc.*, No. 07 CIV. 5600 PKC, 2011 WL 1458155, at *3 (S.D.N.Y. Apr. 13, 2011) (quoting *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 685 (S.D.N.Y. 2007) (internal quotation marks omitted)).  The Court considers each element in turn.

### a.  Protected Conduct

Protected conduct is defined as actions taken "'in furtherance of an action under the FCA,' that is, an employee 'must have been investigating matters that were calculated, or reasonably could have le[d], to a viable FCA action.'" *Id.* at *4 (quoting *Faldetta v. Lockheed Martin Corp.*, 98 Civ. 2614(RCC), 2000 WL 1682759, *12 (S.D.N.Y. Nov. 9, 2000)).  Simply put, "[t]he plaintiff must demonstrate that her investigation, inquiries, and/or testimony were directed at exposing a fraud upon the government." *Moor-Jankowski v. Bd. of Trustees of New York Univ.*, No. 96 CIV. 5997 (JFK), 1998 WL 474084, at *10 (S.D.N.Y. Aug. 10, 1998) (internal citations and quotation marks omitted).   The concept of "[p]rotected activity is interpreted broadly." *U.S. ex rel. Sasaki v. New York Univ. Med. Ctr.*, No. 05 CIV. 6163 LMM HBP, 2012 WL 220219, at *12 (S.D.N.Y.

---

[8] New York's whistleblower retaliation statute "'is essentially identical in language and substance to its federal counterpart,' *Forkell v. Lott Assisted Living Corp.*, No. 10–cv–5765, 2012 WL 1901199, at *14 (S.D.N.Y. May 21, 2012), and 'courts interpret [the former] by closely tracking judicial interpretation of [the latter].' *Landfield v. Tamaeres Real Estate Holdings, Inc.*, No. 11–cv–105149, 2012 WL 3135052, at *6 (N.Y. Sup. Ct. July 23, 2012)." *Monsour v. New York State Office for People with Developmental Disabilities*, No. 1:13-CV-0336 TJM CFH, 2014 WL 975604, at *10 (N.D.N.Y. Mar. 12, 2014).

Jan. 25, 2012), *aff'd sub nom. ABC v. NYU Hosps. Ctr.*, 629 F. App'x 46 (2d Cir. 2015) (quoting *Garcia*, 2011 WL 1458155, at *4).

Plaintiff asserts that Weisman's instruction to record the second free lunch as a lunch for an "open student" "meant that it would falsely appear in the written, public records that Peekskill was providing free lunches to additional students when that was not true." (Am. Compl. ¶¶ 46–47). In response, Whitsons argues that Plaintiff was not engaged in a protected activity, because she did not have a basis for believing that Whitsons and/or the District actually falsely reported any information to the government. That is, irrespective of the identity of the students, Plaintiff has not alleged that the *number* of the free lunches served was falsely reported. This distinction, however, fails to appreciate Plaintiff's concern that Weisman's approach might "mak[e] it appear [that] Peekskill and Whitsons were providing more students with free lunches." (*Id.* at ¶ 53.) Furthermore, Plaintiff has asserted that she objected because she believed this was the unlawful stealing of public funding, fraud, public corruption, and/or misuse of public funds. (*Id.* ¶ 54–55.) At this stage, that is sufficient to plead this element of her FCA claims.

### b. Employer's Knowledge of Plaintiff's Conduct

Whitsons' argument regarding the second element is circular: Whitsons claims it could not be aware of a protected activity because a protected activity did not take place. As stated above, the Court accepts the protected activity element as well-pleaded. And the Amended Complaint makes clear that Plaintiff told Eric Kaplan of Whitsons and Weisman of the District about her objections to the allegedly fraudulent conduct. (*Id.* ¶¶ 54–55, 61–64.)

Whitsons next argues that Plaintiff did not advise Whitsons that her refusal was protected, and that Weisman told her that the recording was not a felony. (*See id.* ¶ 72.) Whitsons does not cite, nor is the Court aware of any support, for the proposition that a plaintiff must go so far as to

pointedly identify her objections as legally protected.  The Court therefore finds this element is satisfied by the pleadings.

### c.   Retaliation "Because Of" the Protected Conduct

Plaintiff cites three instances of alleged retaliation: (1) Plaintiff's transfer to the high school and change of duties after she voiced her complaints to Weisman and Kaplan; (2) Plaintiff's suspension after she again objected to Weisman; and (3) Plaintiff's termination in the days following her suspension.  Whitsons and the District argue that Plaintiff has failed to adequately plead the third element of her FCA claims: that she was retaliated against "because of" the protected conduct.  *See* 31 U.S.C. § 3730(h)(1).[9]

### i.   Plaintiff's Transfer

Whitsons argues that Weisman, who is not a Whitsons employee, transferred Plaintiff. (Am. Compl. ¶ 70.)  Plaintiff concedes this point.  (See ECF No. 42 at 9.)  Accordingly, any claim of retaliation against Whitsons based on Plaintiff's transfer is dismissed with prejudice.

Plaintiff instead alleges that Weisman, acting on behalf of the District, transferred Plaintiff a few days after she voiced her objections and "forced her to cut fruit instead of her normal job as Head Cook," and that this suffices to plead that Plaintiff was retaliated against  "because of" her objections.  The District does not contest Weisman's involvement in Plaintiff's transfer; the Court therefore accepts this claim as adequately pleaded as against the District.[10]

---

[9] The Second Circuit has not interpreted the "because of" causation standard for an FCA retaliation claim. *See, e.g., Lawrence v. Int'l Bus. Mach. Corp.*, No. 12CV8433(DLC), 2017 WL 3278917, at *7 (S.D.N.Y. Aug. 1, 2017).  Several courts in this district employ a "but-for" causation standard, rather than the less-stringent "motivating factor" standard.  *See Malanga v. New York Univ.*, No. 14CV9681, 2018 WL 333831, at *4 (S.D.N.Y. Jan. 9, 2018) ("this Court joins the chorus of courts recognizing a "but-for" causation standard under the FCA.").  For the reasons discussed below, the Court does not deem it necessary to specify the contours of this standard for the purposes of the instant motion.

[10] The District instead argues that Plaintiff's transfer and reassignment does not constitute an adverse action under the FCA.  (*See* ECF No. 44 at 8 n.5).  Reading the Amended Complaint liberally, however, the Court finds that

### ii. Plaintiff's Suspension

As for Plaintiff's suspension, Plaintiff similarly argues that this occurred a few days after she voiced her objections, and that this suffices to plead that Plaintiff was suspended by the District and Whitsons "because of" her objections. (Am. Compl. ¶ 74.)  Whitsons' general response appears to be that Plaintiff was suspended for reasons unrelated to her objections. (*See* ECF No. 40 at 6.)   At this early stage, however, the Court accepts the facts pleaded in the Amended Complaint as true and therefore finds this element has been sufficiently pleaded as to Whitsons.

The District argues that neither Weisman nor Zimmerman have been alleged to be involved in Plaintiff's suspension.  But Plaintiff contends that the suspension occurred just days after she objected again to Weisman—and that this timing supports the inference of causation.  *See Hazelwood v. Highland Hosp.*, 763 F. App'x 60, 62–63 (2d Cir. 2019) ("[A] causal connection [in a retaliation case] can be established indirectly by showing that the protected activity was closely followed in time by the adverse employment action."); *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (inference of causation established in retaliation case where time between protected activity and adverse employment action was twelve days).  Again, the Court will draw all inferences in Plaintiff's favor and therefore accepts this claim as adequately pleaded as against the District.

### iii. Plaintiff's Termination

Plaintiff goes on to alleges that, "[i]n further retaliation, a few days later, Rick Emery, the District Manager for Whitsons, then informed the Plaintiff she was terminated based on allegations

---

Plaintiff has plausibly alleged a "demotion" or "discriminatory action" under 31 U.S.C. § 3730(h)(1). *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (holding that "reassignment with significantly different responsibilities" can constitute adverse employment action); *Pitts v. Howard Univ.*, 111 F. Supp. 3d 9, 22 (D.D.C. 2015) (reassignment to position with "significantly diminished responsibilities" can constitute action in retaliation for protected conduct under False Claims Act retaliation provision).

14

being made against her."  (Am. Compl. ¶ 75.)  Whitsons argues that the reason for Plaintiff's termination was the "allegations being made against her" about her treatment of students. (*See* Am. Compl. ¶ 75) ("On or about June 7, 2018, Whitsons notified the Plaintiff her employment was terminated due to 'complaints from our client for rude and improper behavior to students and faculty.'")  Plaintiff maintains that this was a pretext for Whitsons' retaliatory action.  (*See* ECF No. 42 at 9.)  Again, construing the allegations liberally, the Court finds Plaintiff has adequately pleaded this element as against Whitsons.

As to the District's involvement in Plaintiff's termination, the District raises several challenges to the sufficiency of the pleadings, arguing: (1) the decision to terminate Plaintiff was made prior to Zimmerman's May 25 email; (2) Plaintiff fails to allege that Zimmerman was aware of the protected activity at the time she sent the May 25 email; and (3) Plaintiff fails to allege that Weisman spoke to anyone at Whitsons regarding the decision to terminate Plaintiff's employment. The Court agrees that the adverse action—the decision to terminate Plaintiff—appears to be alleged to have occurred prior to the May 25 email.  (*See*  Am. Compl. ¶¶ 75–77.)  This does not inoculate the District from Plaintiff's claim, however, because the alleged timing of the adverse event in relation to Plaintiff's objections to Weisman is enough to plausibly state an FCA claim. For these reasons, Plaintiff's FCA claims survive, with the exception of the claim against Whitsons with respect to the transfer, which is dismissed with prejudice.

**III.  State Law Claims**

In addition to her First Amendment and FCA claims, Plaintiff also asserts common law tort causes of action.  Below, the Court considers the sufficiency of each claim.

### a. Defamation

Plaintiff alleges claims for slander against District employee Weisman (Am. Compl. ¶¶ 149–61), libel against District employee Zimmerman (Am. Compl. ¶¶ 162–74), as well as libel claims against Whitsons employees Emery and Kaplan (*Id.* ¶¶ 181–194).

To state a claim for defamation under New York law, a plaintiff must allege: (i) a false statement of fact "of and concerning" the plaintiff, (ii) published to a third party without authorization or privilege, (iii) made with the applicable level of fault on the part of the publisher, (iv) that either caused special harm or constitutes defamation per se. *See Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 528 (2d Cir. 2018) (quoting *Albert v. Loksen*, 239 F.3d 256, 265–66 (2d Cir. 2001)).   A plaintiff must plead the defamatory statements with some particularity. N.Y. C.P.L.R. 3016(a) ("In an action for libel or slander, *the particular words complained of shall be set forth in the complaint*, but their application to the plaintiff may be stated generally." (emphasis added)). Under Federal Rule of Civil Procedure 8's liberal pleading standards, this requires a plaintiff to "identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Neal v. Asta Funding, Inc.*, 13 CV 2176 (VB), 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014).

### i. Slander Claim Against Weisman

Plaintiff alleges that "sometime between May 4 and May 29, 2018," Weisman "ma[d]e verbal, false, defamatory statements about Plaintiff," i.e. that Plaintiff "has mistreated children," to third persons "such as employees of Whitsons and employees of Peekskill." (Am. Compl. ¶¶ 102–03, 151, 152.)  Plaintiff alleges that Weisman published these statements "negligently and with actual knowledge of falsity or with reckless disregard for the truth" and that he had no

authorization or privilege to make such statements.  (*Id.* ¶¶ 153–54.)   The District Defendants argue that (1) that the alleged statements were subject to common-interest privilege; and (2) that this claim is insufficiently pleaded.

*First*, the qualified privilege is an affirmative defense that must be pleaded and proven by the defendant, and thus is not a proper basis for a 12(b)(6) motion to dismiss. *See Giuffre v. Maxwell*, 165 F. Supp. 3d 147, 155 (S.D.N.Y. 2016) ("The affirmative privilege defenses are . . . not appropriate for resolution on a motion to dismiss.").  Plaintiff has argued that she may be able to overcome any qualified privilege by alleging that Weisman knew the statements about mistreating children were false, and that he made the statements for an improper purpose.  At this stage, the issue of qualified privilege cannot be resolved.  *See Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 410–11 (2d Cir. 2000) (reversing 12(b)(6) dismissal because plaintiff may overcome qualified privilege presumption by demonstrating that defamatory statement was false, and that defendant acted (a) beyond the scope of the privilege, (b) with common law malice, or (c) with knowledge that the statement was false or with a reckless disregard as to its truth).

*Second*, the Court agrees that the defamation claim is deficiently pleaded.  Although Plaintiff has alleged, in broad strokes, to whom the statements were made (unidentified Whitsons and District employees), how they were communicated (verbally), and when (within a 25-day period), this does not suffice to meet the particularity requirement under New York law.  *See, e.g., Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 790 (S.D.N.Y. 2019) (allegation that a statement was made during a certain month does not suffice to meet the particularity requirement); *see also Mobile Data Shred, Inc. v. United Bank of Switzerland*, No. 99 CIV. 10315 SAS, 2000 WL 351516, at *6 (S.D.N.Y. Apr. 5, 2000) ("In evaluating the sufficiency of claims of slander, the courts in this Circuit have required that the complaint adequately identify

the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." ).  The Court, as such, dismisses without prejudice the slander claim against Defendant Weisman.

### ii.  Libel Claims Against Zimmerman

Plaintiff alleges that Zimmerman sent an email on May 25, 2018 to Weisman and Emery (the "May 25th email"), in which Zimmerman described Plaintiff's "behavior and interaction with students and staff" as "unacceptable, inappropriate, and unconducive" (Am. Compl. ¶ 77), including several instances of "mean spirited behavior" (*id.* at ¶ 79), and stating that Plaintiff should be transferred because her time working in the District had "come to an end." (*Id*. at ¶ 81). Plaintiff claims that this email constitutes libel/libel per se.  (*Id.* ¶¶ 162–74).  In response, the District argues that the May 25th email was subject to the common interest privilege, that the allegations do not state a libel per se claim, and that Plaintiff has failed to allege special damages.

*First*, for the reasons stated above, the Court will not dismiss this claim on the basis of the qualified common-interest privilege defense at this stage.

*Second*, the Court agrees with the District that the allegations regarding the May 25 email do not amount to a plausible libel per se claim.  For the statement to constitute libel per se, the statement must "(i) charge an individual with a serious crime, (ii) injure another in his or her trade, business, or profession, (iii) claim an individual has a loathsome disease, or (iv) impute unchastity." *Thompson v. Bosswick*, 855 F. Supp. 2d 67, 76–77 (S.D.N.Y. 2012) (citing *Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 605 N.E.2d 344, 347 (1992)).  Here, the May 25 email pertains to Plaintiff's professional reputation, however, recovery for statements of this ilk is "limited to statements that describe the plaintiff as unfit for 'the proper conduct of the business, trade profession or office itself. The statement must be made with reference to a matter of significance

and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities.'"  *Marchuk v. Faruqi & Faruqi*, LLP, 100 F. Supp. 3d 302, 313 (S.D.N.Y. 2015) (quoting *Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992)). As the District points out, Zimmerman's May 25 email statements amount to general criticisms of Plaintiff, and Plaintiff does not argue that the statements indicate Plaintiff was unsuited for her particular profession—in fact, Plaintiff does not rebut this objection at all.  (*See* ECF No. 47 at 23.)  Plaintiff's libel per se claim against Zimmerman is therefore dismissed with prejudice.

*Third*, Plaintiff has alleged special damages in the form of economic damages from her lost wages.  (*See* Am. Compl. ¶¶ 155, 168.)  Thus, the Court will not dismiss Plaintiff's libel claim against Zimmerman on this basis.  *See, e.g., Diorio v. Ossining Union Free Sch. Dist.*, 960 N.Y.S.2d 49 (Sup. Ct. West. Cty. 2011), aff'd, 96 A.D.3d 710, 946 N.Y.S.2d 195 (2012) ("Plaintiff satisfies the requirement of pleading special damages in a defamation action by specifically alleging pecuniary losses arising from the termination of his employment.").  Because Plaintiff has sufficiently pleaded the elements of libel, this claim remains.

### iii.  Libel Claims Against Emery and Kaplan

Plaintiff brings identical claims against Emery and Kaplan, alleging they each "committed a libel against the Plaintiff by making written, false, defamatory statements about Plaintiff to third persons in the May 29, 2018 memorandum . . . causing Plaintiff damages and injuries, including the loss of her occupation and employment."  (Am. Compl. at ¶¶ 183, 190.)  The Whitsons Defendants and Kaplan raise several objections to these claims.

*First*, the Whitsons Defendants and Kaplan argue that the alleged statements contained in the May 29, 2018 memorandum are actually attributable to Holliman and Encarnacion—not Emery or Kaplan (*see* Am. Compl. ¶¶ 83, 86, 89, 92, 95).  It is well-settled, however, that "one who

repeats or otherwise republishes defamatory matter is subject to liability as if he had originally published it." *Cianci v. New Times Pub. Co.*, 639 F.2d 54, 61 (2d Cir. 1980) (quoting Restatement, Second, Torts § 578 (1977)); *Condit v. Dunne*, 317 F. Supp. 2d 344, 363 (S.D.N.Y. 2004) (discussing "widely recognized" republication rule and collecting cases).  This argument therefore fails as a matter of law.

*Second*, the Whitsons Defendants and Kaplan argue that the statements in question were not published to any third parties.  Plaintiff has alleged that "upon information and believe [sic], Emery and/or Kaplan published the defamatory statements to third parties at Whitsons and Peekskill."  (Am. Compl. ¶ 98.)  "Under New York defamation law, "publication is a term of art . . . A defamatory writing is not published if it is read by no one but the one defamed. Published it is, however, as soon as read by any one else." *Albert v. Loksen*, 239 F.3d 256, 269 (2d Cir. 2001) (quoting *Ostrowe v. Lee,* 256 N.Y. 36, 38, 175 N.E. 505 (1931) (Cardozo, C.J.)). "In New York, this rule applies even to statements made by one employee to another." *Id.* at 269.  At this stage, this allegation of publication is sufficiently pleaded.

*Third*, the Whitsons Defendants and Kaplan argue that Plaintiff has not pleaded fault or negligence on Emery or Kaplan's part in the alleged publication.  But the Amended Complaint plainly includes these allegations: "Emery published the defamatory statements negligently and with actual knowledge of falsity or with reckless disregard for the truth by failing to conduct a reasonable investigation prior to publication," (Am. Compl. ¶ 186), and "Kaplan published the defamatory statements negligently and with actual knowledge of falsity or with reckless disregard for the truth by failing to conduct a reasonable investigation prior to publication."  (*id*. ¶ 193.)

*Fourth*, both the Whitsons Defendants and Kaplan invoke the qualified privilege defense. As above, the Court will not dismiss this claim on the basis of the qualified common-interest

privilege defense at this stage. In sum, the Court finds Plaintiff's libel claim against Emery is sufficiently pleaded to suggest a plausible claim for relief.

### b. Tortious Interference Claims Against Peekskill, Zimmerman, Weisman, and Emery

Plaintiff also raises tortious interference with advantageous business relations claims against the District, Zimmerman, Weisman, and Emery.  (Am. Compl. ¶¶ 144–48.)  Under New York law, a plaintiff must plead the following four elements to establish a tortious interference with advantageous business relations claim: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).  Here, Plaintiff alleges that the District, Zimmerman, Weisman, and Emery interfered with Plaintiff's business relations "by stating and writing false negative statements about the Plaintiff and causing Plaintiff's termination of employment at Whitsons and termination of her business relationship with Peekskill."  (Am. Compl. ¶ 147.)

The District and Whitsons Defendants argue that Plaintiff's tortious interference claims are duplicative of her defamation claims.  The Court agrees that these claims are duplicative of Plaintiff's defamation claims: the actions that Plaintiff claims constitutes a tortious interference with her business relationships with Whitsons and the District are the same actions that constitute the basis for Plaintiff's defamation claims against Weisman, Zimmerman, Emery and Kaplan.  The injury Plaintiff complains of is also identical: her termination of employment at Whitsons.  "Under New York law, tort claims are construed as defamation claims not just when they 'seek damages only for injury to reputation, but also where the entire injury complained of by plaintiff flows from the effect on his reputation.'"  *Chao v. Mount Sinai Hosp.*, No. 10 CV 2869 HB, 2010 WL

5222118, at *11 (S.D.N.Y. Dec. 17, 2010), *aff'd sub nom. Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892 (2d Cir. 2012) (quoting *Jain v. Securities Indus. and Fin. Markets Assoc.*, No. 08 Civ. 6463, 2009 WL 3166684, at *9 (S.D.N.Y. Sept.28, 2009)).   Accordingly, these claims are dismissed as a matter of law.   *See Goldman v. Barrett*, No. 15 CIV. 9223 (PGG), 2016 WL 5942529, at *7 (S.D.N.Y. Aug. 24, 2016) ("Claims for tortious interference with prospective economic advantage are dismissed as duplicative of defamation claims where such claims are premised on the same 'factual allegations . . . [as] the facts underlying [a] defamation claim.'").[11]

### c. Intentional Infliction of Emotional Distress Claims Against Weisman and Zimmerman

Lastly, the Amended Complaint includes intentional infliction of emotional distress ("IIED") claims against Weisman and Zimmerman.   (Am. Compl. ¶¶ 175–80).   Specifically, Plaintiff alleges that Weisman's "conduct in ordering Plaintiff to commit fraud, in retaliating against her because she refused by causing her transfer, suspension, and termination, and in stating that Plaintiff has mistreated children was extreme and outrageous," and that Zimmerman's "conduct in in [sic] writing the false and defamatory statements about the Plaintiff was extreme and outrageous."   (*Id.* ¶¶ 176, 179.)   Furthermore, she alleges these actions "caused Plaintiff's termination of employment, and resulted in severe emotional distress to the Plaintiff."   (*Id.*)   The District Defendants argue that these claims are duplicative of several of Plaintiff's other claims, and that they do not rise to the level of culpability necessary to establish such a claim.

To maintain an action for IIED in New York, a plaintiff must plead four elements: "(1) extreme and outrageous conduct; (2) the intentional or reckless nature of such conduct; (3) a causal

---

[11] *See also Pusey v. Bank of Am.*, N.A., No. 14-CV-04979 FB LB, 2015 WL 4257251, at *4 (E.D.N.Y. July 14, 2015) ("[Defendant] contends that [Plaintiff's] . . . tortious interference with prospective business relations claims . . . should be dismissed [as] duplicative of her defamation claim. The Court agrees."); *Krepps v. Reiner*, 588 F. Supp. 2d 471, 485 (S.D.N.Y. 2008) ("Plaintiff is not permitted to dress up a defamation claim as a claim for intentional interference with a prospective economic advantage.").

relationship between the conduct and the resulting injury; and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996); *Cuellar v. Love*, No. 11-CV-3632(NSR), 2014 WL 1486458, at *14 (S.D.N.Y. 2014) (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993)).  Because the claim of intentional infliction of emotional distress is so disfavored, *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 160 (S.D.N.Y. 2006), a plaintiff must typically show that the defendant's conduct has been "so extreme in degree" as to exceed "all possible bounds of decency."  *See Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983).  Any allegations of suffering from severe emotional distress must be supported with objective evidence and cannot be speculative.  *See Allam v. Meyers*, 906 F. Supp. 2d 274, 282 (S.D.N.Y. 2012) (citing *Roche v. Claverack Coop. Ins. Co.*, 59 A.D.3d 914, 919 (2009)); *Cusimano v. United Health Servs. Hosp., Inc.*, 91 A.D.3d 1149, 1152, (2012); *Walentas v. Johnes*, 257 A.D.2d 352, 353 (1999); *Christenson v. Gutman*, 249 A.D.2d 805, 808–09 (1998)).

The Court agrees with the District Defendants that the conduct alleged does not "rise to the level of outrageousness New York law demands for a viable IIED claim." *Paulson v. Tidal*, No. 16-CV-09049-LTS-OTW, 2018 WL 3432166, at *4 (S.D.N.Y. July 16, 2018) (dismissing IIED claim based on allegations of wrongful termination).  While Plaintiff's communications with Weisman and Zimmerman and her allegedly wrongful termination may be distressing, the conduct as described in the Amended Complaint was not "so extreme in degree" as to exceed "all possible bounds of decency."  *See Murphy*, 58 N.Y.2d at 303.  Plaintiff's allegations "contain none of the hallmarks of successful IIED claims: she does not allege that [Weisman and Zimmerman] (i) publicly humiliated her, (ii) made false accusations of criminal or heinous conduct, (iii) verbally abused or harassed her, or (iv) physically assaulted, battered, or threatened her." *Paulson*, 2018 WL 3432166, at *4; *see, e.g., Ifill v. United Parcel Serv.*, No. 04 Civ. 5963, 2005 WL 736151, at

*7 (S.D.N.Y. Mar. 29, 2005) (allegations that employer harassed, discriminated, demoted, and retaliated against plaintiff were insufficient to state intentional infliction of emotional distress claim).  Accordingly, Plaintiff's IIED claims against Weisman and Zimmerman are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the motions to dismiss are GRANTED in part and DENIED in part, as follows:

- Plaintiff's First Amendment retaliation claims are dismissed with prejudice;

- Plaintiff's FCA claim against Whitsons related to Plaintiff's transfer is dismissed with prejudice;

- Plaintiff's slander claim against Weisman is dismissed without prejudice;

- Plaintiff's libel per se claim against Zimmerman is dismissed with prejudice;

- Plaintiff's tortious interference claims against Peekskill, Zimmerman, Weisman, and Emery are dismissed with prejudice; and

- Plaintiff's intentional infliction of emotional distress claims against Weisman and Zimmerman are dismissed with prejudice.

Plaintiff's other FCA claims against the District and Whitsons; libel claims against Zimmerman; and libel claims against Emery and Kaplan remain.  Plaintiff's claims against Encarnacion and Holliman, which have not been contested by the Moving Defendants' motions, also remain.

Plaintiff may file a Second Amended Complaint within 30 days of the date of this Opinion, on or before June 19, 2020, should she choose to reassert the claim that was dismissed without prejudice.  Because Plaintiff's Second Amended Complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to remain—aside from

24

those claims dismissed with prejudice per this Order—must be included in the Second Amended Complaint.  If Plaintiff elects to file a Second Amended Complaint, Defendants shall have thirty days from the date of Plaintiff's filing to respond.

      Accordingly, the Clerk of the Court is respectfully directed to terminate the Moving Defendants' motions to dismiss at ECF Nos. 40, 43, and 49.  If Plaintiff does not file an Amended Complaint by June 19, 2020, the parties are directed to complete the attached Case Management Plan and submit it to the Court by July 20, 2020.

Dated:   May 19, 2020  
        White Plains, New York

                             SO ORDERED:

                             NELSON S. ROMÁN  
                             United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                                    Rev. May 2014
-------------------------------------------------------------x

                                          Plaintiff(s),        **CIVIL CASE DISCOVERY PLAN
                                                               AND SCHEDULING ORDER**

             - against -

                                          Defendant(s).        _____ CV _____ (NSR)

-------------------------------------------------------------x

       This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with
counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

   1.      All parties [consent] [do not consent] to conducting all further proceedings before
           a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).
           The parties are free to withhold consent without adverse substantive consequences.
           (If all parties consent, the remaining paragraphs of this form need not be
           completed.)

   2.      This case [is] [is not] to be tried to a jury.

   3.      Joinder of additional parties must be accomplished by _____.

   4.      Amended pleadings may be filed until _____. Any party
           seeking to amend its pleadings after that date must seek leave of court via motion.

   5.      Interrogatories shall be served no later than _____, and responses
           thereto shall be served within thirty (30) days thereafter.  The provisions of Local
           Civil Rule 33.3 [shall] [shall not] apply to this case.

   6.      First request for production of documents, if any, shall be served no later than
           _____.

   7.      Non-expert depositions shall be completed by _____.

           a.     Unless counsel agree otherwise or the Court so orders, depositions shall not
                  be held until all parties have responded to any first requests for production
                  of documents.

           b.     Depositions shall proceed concurrently.

           c.     Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8.    Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.    Requests to Admit, if any, shall be served no later than _____.

10.    Expert reports shall be served no later than _____.

11.    Rebuttal expert reports shall be served no later than _____.

12.    Expert depositions shall be completed by _____.

13.    Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.    **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.    Any motions shall be filed in accordance with the Court's Individual Practices.

16.    This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.    The Magistrate Judge assigned to this case is the Hon. _____.

18.    If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.    The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
_____

_____
Nelson S. Román, U.S. District Judge